Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGEL RODRIGUEZ,<br><br>　　Plaintiff,<br><br>　　v.<br><br>1LIFE HEALTHCARE, INC., AMIR DAN RUBIN, PAUL R. AUVIL, MARK S. BLUMENKRANZ, BRUCE W. DUNLEVIE, KALEN F. HOLMES, DAVID P. KENNEDY, FREDA LEWIS-HALL, ROBERT R. SCHMIDT, and SCOTT C. TAYLOR,<br><br>　　Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Angel Rodriguez ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.　This is an action against 1Life Healthcare, Inc. ("1Life" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)

1

and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of 1Life and Iora Health, Inc. ("Iora").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of 1Life common stock.

7. Defendant 1Life operates a membership-based primary care platform under the One Medical brand. The Company has developed a healthcare membership model based on direct consumer enrollment, as well as employer sponsorship. The Company is incorporated in

Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "ONEM."

8. Defendant Amir Dan Rubin ("Rubin") is Chief Executive Officer, President, and Chairman of the Board of the Company.

9. Defendant Paul R. Auvil ("Auvil") is a director of the Company.

10. Defendant Mark S. Blumenkranz ("Blumenkranz") is a director of the Company.

11. Defendant Bruce W. Dunlevie ("Dunlevie") is a director of the Company.

12. Defendant Kalen F. Holmes ("Holmes") is a director of the Company.

13. Defendant David P. Kennedy ("Kennedy") is a director of the Company.

14. Defendant Freda Lewis-Hall ("Lewis-Hall") is a director of the Company.

15. Defendant Robert R. Schmidt ("Schmidt") is a director of the Company.

16. Defendant Scott C. Taylor ("Taylor") is a director of the Company.

17. Defendants Rubin, Auvil, Blumenkranz, Dunlevie, Holmes, Kennedy, Lewis-Hall, Schmidt, and Taylor are collectively referred to herein as the "Individual Defendants."

18. Defendants 1Life and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

19. On June 7, 2021, 1Life announced that it had entered into a definitive agreement to acquire Iora in an all-stock transaction. Under the terms of the agreement, Iora shareholders will receive 56.1 million shares of 1Life common stock. Upon completion of the Proposed Transaction, Iora shareholders are expected to own approximately 26.75% of the combined company.

20. The press release announcing the Proposed Transaction states, in pertinent part:

**One Medical Announces Agreement to Acquire Iora Health**

June 07, 2021 07:30 ET | Source: 1Life Healthcare, Inc.

*One Medical expands member-based, technology-powered primary care model to every stage of life, and extends into full-risk Medicare reimbursement models*

*Positions One Medical to deliver better health, better care, and lower costs across a combined 28 markets and beyond*

SAN FRANCISCO, June 07, 2021 (GLOBE NEWSWIRE) -- 1Life Healthcare, Inc. (One Medical) (Nasdaq: ONEM), a leading human-centered and technology-powered primary care organization, today announced it has entered into a definitive agreement to acquire Iora Health, a human-centric, value-based primary care group with built-for-purpose technology focused on serving Medicare populations, in an all-stock transaction valued at approximately $2.1 billion.

*   *   *

**Leadership and Governance**

A designee of Iora Health will join the One Medical Board and Rushika Fernandopulle will become One Medical's Chief Innovation Officer.

**Transaction Details**

Under the terms of the agreement, Iora Health shareholders will receive 56.1 million shares of One Medical common stock. Based on the closing share price of One Medical's common stock of $35.59 on June 4th, 2021, the total transaction is valued at approximately $2.1 billion. Upon completion of the transaction, Iora Health shareholders are expected to own approximately 26.75% of the combined company.

The transaction is expected to close in late Q3 or Q4 of 2021 and is subject to customary closing conditions, including approval by One Medical and Iora Health stockholders and receipt of regulatory approval.

**Advisors**

Morgan Stanley & Co. LLC served as exclusive financial advisor to One Medical and Cooley LLP served as legal advisor.

Credit Suisse served as exclusive financial advisor to Iora Health and Skadden, Arps, Slate, Meagher & Flom LLP served as legal advisor.

*   *   *

**About One Medical**

One Medical is a membership-based and technology-powered primary care platform with seamless digital health and inviting in-office care, convenient to where people work, shop, live, and click. Our vision is to delight millions of members with better health and better care while reducing costs. Our mission is to transform health care for all through our human-centered, technology-powered model.

Headquartered in San Francisco, 1Life Healthcare, Inc. is the administrative and managerial services company for the affiliated One Medical physician-owned professional corporations that deliver medical services in-office and virtually. 1Life and the One Medical entities do business under the "One Medical" brand.

**About Iora Health**

Iora Health is building a different kind of health system to deliver high impact relationship-based care. With a mission to restore humanity to health care and a goal to transform healthcare overall, Iora Health's care model provides extraordinary service to patients to ensure improved health outcomes while lowering overall health costs. Our patients enjoy the benefits of better access to care, office- and non-office-based encounters (e.g. phone, text messages, and email), an accessible and transparent medical record, and robust educational offerings. Our practices across the U.S. enjoy the benefits of smaller panel sizes, closer relationships with patients, and the opportunity to lead systemic change in health care delivery while working with a true team.

21. On July 16, 2021, Defendants caused to be filed with the SEC a Form 424B3 - Prospectus (the "Prospectus") in connection with the Proposed Transaction.

**B. The Prospectus Contains Materially False and Misleading Statements and Omissions**

22. The Prospectus, which recommends that 1Life shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) 1Life's, Iora's, and the combined company's financial projections; (ii) the financial analyses performed by 1Life's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Morgan Stanley.

23. The omission of the material information (referenced below) renders the following sections of the Prospectus false and misleading, among others: (i) 1Life's Reasons for the Merger;

Case 1:21-cv-04210-WFK-JRC   Document 1   Filed 07/27/21   Page 6 of 13 PageID #: 6

Recommendation of the Stock Issuance by the 1Life Board; (ii) Opinion of Financial Advisor to 1Life, Morgan Stanley & Co. LLC; and (iii) Unaudited Financial Information.

24. Unless and until the material misstatements and omissions (referenced below) are remedied before the August 27, 2021 shareholder vote on the Proposed Transaction, 1Life shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning 1Life's, Iora's, and the Combined Company's Financial Projections

25. The Prospectus omits material information concerning 1Life's, Iora's, and the combined company's financial projections.

26. With respect to the "Forecasts," the Prospectus fails to disclose: (1) all line items underlying (i) Revenue, (ii) Care Margin, (iii) Adjusted EBITDA, (iv) Unlevered Free Cash Flow, (v) Revenue Synergies, (vi) Total Adjusted EBITDA, and (vii) Total Cashflow Impact (excluding taxes); (2) 1Life's, Iora's, and the combined company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

27. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for

6

or against the Proposed Transaction.

28. When a company discloses non-GAAP financial metrics in a Prospectus that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

29. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Morgan Stanley's Analyses

30. In connection with the Proposed Transaction, the Prospectus omits material information concerning analyses performed by Morgan Stanley.

31. The Prospectus fails to disclose the following concerning Morgan Stanley's "*Discounted Future Value Analysis*" of 1Life and Iora: (1) the individual inputs and assumptions underlying the (i) 2023E revenue multiples of 7.0x – 9.0x and 8.5x – 11.5x, and (ii) discount rates of 8.6% and 8.9%; (2) the respective assumed net debt balances of 1Life and Iora; and (3) the

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited July 27, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

projected net debt balances of 1Life.

32. The Prospectus fails to disclose the following concerning Morgan Stanley's "*Discounted Cash Flow Analysis*" of 1Life and Iora: (1) the unlevered free cash flows used in the analyses and all underlying line items; (2) the terminal value ranges for 1Life and Iora; (3) the individual inputs and assumptions underlying the (i) perpetuity growth rate of 2.5% to 3.5%, and (ii) discount rates of 8.0% to 9.4%, 7.8% to 9.3%, and 0%; (4) the tax savings from NOLs; (5) the net debt and non-controlling interests of 1Life and Iora; and (6) the cash from the future capital raises done by Iora.

33. The Prospectus fails to disclose the following concerning Morgan Stanley's "*Broker Price Targets Analysis*": (1) the individual price targets observed by Morgan Stanley in its analysis; (2) the sources thereof; and (3) the individual inputs and assumptions underlying the illustrative discount rate of 8.9%.

34. The valuation methods, underlying assumptions, and key inputs used by Morgan Stanley in rendering its purported fairness opinion must be fairly disclosed to 1Life shareholders. The description of Morgan Stanley's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, 1Life shareholders are unable to fully understand Morgan Stanley's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Morgan Stanley

35. The Prospectus omits material information concerning potential conflicts of interest

8

involving Morgan Stanley.

36. The Prospectus provides that "1Life has agreed to pay Morgan Stanley a fee for its services of . . . up to an additional $2 million, which is payable at 1Life's sole discretion upon consummation of the merger." The Prospectus, however, fails to disclose the circumstances under which Morgan Stanley may receive "up to an additional $2 million, which is payable at 1Life's sole discretion upon consummation of the merger," and whether the Company intends to pay Morgan Stanley such a fee.

37. The Prospectus also fails to disclose the specific timing and nature of the past services Morgan Stanley and/or its affiliates provided 1Life and/or its affiliates.

38. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

39. The omission of the above-referenced information renders the Prospectus materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

40. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Prospectus specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the

9

circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

42. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Prospectus with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Prospectus.

43. The false and misleading statements and omissions in the Prospectus are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

44. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

45. Because of the false and misleading statements and omissions in the Prospectus, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

46. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false statements contained in the Prospectus filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Prospectus.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Prospectus, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Prospectus and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Prospectus at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Prospectus.

50. In addition, as the Prospectus sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Prospectus purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.  Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.  Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 27, 2021

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
       zhalper@halpersadeh.com

*Counsel for Plaintiff*